IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLAUD CAVINESS,

        Plaintiff,            No. CIV S-04-2388 GEB DAD PS

    v.

GORDON R. ENGLAND, et al.     <u>ORDER AND</u>

        Defendants.      <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        This matter came before the court on October 27, 2006, for hearing on plaintiff's renewed motion to transfer and defendants' renewed motion for summary judgment. Attorney John L. Taylor appeared telephonically for plaintiff. Assistant United States Attorney Kurt Didier appeared for defendants. Upon hearing the parties' arguments, the motions were taken under submission. For the reasons stated below, plaintiff's motion to transfer will be denied and the undersigned will recommend that defendants' motion for summary judgment be granted.

PROCEDURAL HISTORY

        Plaintiff, proceeding pro se, commenced this action on November 8, 2004, by filing a fee-paid complaint against Gordon R. England, Secretary of the Navy, and the Department of the Navy. The action was assigned to District Judge Edward J. Garcia and was referred to Magistrate Judge Peter A. Nowinski in accordance with Local Rule 72-302(c)(21).

1

By order filed April 12, 2005, the action was reassigned from District Judge Garcia to District Judge Garland E. Burrell, Jr.

Magistrate Judge Nowinski issued a series of orders addressing the pro se plaintiff's failure to effect proper service of process in a timely manner.  After service was effected, defendants appeared by noticing a motion for summary judgment for hearing on September 21, 2005.  Magistrate Judge Nowinski granted the pro se plaintiff's request for additional time to respond to the motion and re-set the hearing for February 8, 2006.

On December 22, 2005, attorney John L. Taylor substituted in as counsel for plaintiff and filed a motion to transfer the case to the United States District Court for the Northern District of California on the ground that the case had been filed by the pro se plaintiff in the wrong court.  The motion was set for hearing on January 25, 2006.  Plaintiff's counsel requested additional time to respond to the pending summary judgment motion.

After defendants filed opposition to plaintiff's motion to transfer, Magistrate Judge Nowinski took the motion to transfer under submission without appearance and without argument.  After defendants' summary judgment motion was fully briefed, that motion was also taken under submission on the papers.  Magistrate Judge Nowinski retired shortly thereafter.

On March 8, 2006, the case was temporarily reassigned to Magistrate Judge John F. Moulds, and on May 24, 2006, the case was temporarily reassigned to Magistrate Judge Gregory G. Hollows.  On August 28, 2006, the case was reassigned to Magistrate Judge Edmund F. Brennan for further proceedings.  After Magistrate Judge Brennan disqualified himself, the case was reassigned to the undersigned on August 29, 2006.  In light of the age of the briefing filed in support of the pending motions, the undersigned denied the motions without prejudice to the re-noticing of either or both motions for hearing before the undersigned on October 27, 2006, with supplemental briefing as to any new arguments.  Defendants filed an amended notice of motion for summary judgment.  Plaintiff did not re-notice the motion to transfer but was permitted to renew the motion at the hearing on October 27, 2006.

PLAINTIFF'S MOTION TO TRANSFER

The pro se plaintiff brought this Title VII action in 2004 alleging that he was subjected to race discrimination in his job as a civilian working for the United States Navy. Defendants deny that any impermissible discrimination or harassment occurred during plaintiff's Navy employment, which ended in December 1996.

Plaintiff's counsel has moved to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1406(a). Plaintiff asserts that the discrimination occurred in Concord, which is located in Contra Costa County and therefore lies within the Northern District of California. Counsel argues that the plaintiff, while proceeding pro se, incorrectly filed his case in the Eastern District of California and that the case should be transferred to remedy the error.

Defendants argue that venue is proper in this court and that the motion to transfer should be denied because there is no defect to cure. Defendants explain that Title VII contains the applicable venue provision. See Johnson v. Payless Drug Stores Northwest, Inc., 950 F.2d 586, 587-88 (9th Cir. 1991) (holding that 42 U.S.C. § 2000e-5(f)(3) is the appropriate venue statute for actions brought under Title VII). Under § 2000e-5(f)(3), plaintiff could have brought his suit in a court "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," which includes all four judicial districts in California, or in the District of Columbia, as the principal place of business for the Department of the Navy, or in the Western District of Washington, where plaintiff's employment records are located.

Defendants note that plaintiff has not argued that relevant witnesses remain employed at the Concord facility or that relevant documents are housed in Concord. If plaintiff were to so argue, defendants point out that plaintiff himself resides in Suisun City, which is located in Solano County and is within the Eastern District of California. Defendants offer evidence that (1) the Navy facility in Concord where plaintiff worked was closed in 1997, (2) plaintiff's employment records are kept in Bremerton, Washington, (3) none of the significant witnesses identified by plaintiff during his administrative proceedings, i.e., his five supervisors,

1  reside within the Northern District, and (4) one of the five former supervisors is believed to be

2  residing in Sacramento.

3          Defendants argue that the statute relied upon by plaintiff in support of his motion

4  to transfer is not applicable because it governs actions in which the original choice of venue was

5  wrong, which is not the case here.  Defendants contend that the moving party bears the burden of

6  persuading the court that venue is improper and that plaintiff has failed to meet his burden in this

7  case.  See Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

8          Plaintiff did not file a reply addressing any of defendants' arguments.  At the

9  hearing of the motion to transfer, plaintiff's counsel merely reiterated that plaintiff worked in the

10  Northern District and that venue would lie there.

11          The statute relied upon by plaintiff is titled "Cure or waiver of defects" and

12  provides as follows:

13          The district court of a district in which is filed a case laying
           venue in the wrong division or district shall dismiss, or if it be in
14          the interest of justice, transfer such case to any district or division
           in which it could have been brought.

15

16  28 U.S.C. § 1406(a).  The venue provision contained in Title VII provides as follows:

17          Each United States district court and each United States court of
           a place subject to the jurisdiction of the United States shall have
18          jurisdiction of actions brought under this subchapter.  Such an
           action may be brought in any judicial district in the State in which
19          the unlawful employment practice is alleged to have been
           committed, in the judicial district in which the employment records
20          relevant to such practice are maintained and administered, or in the
           judicial district in which the aggrieved person would have worked
21          but for the alleged unlawful employment practice, but if the
           respondent is not found within any such district, such an action
22          may be brought within the judicial district in which the respondent
           has his principal office.  For purposes of sections 1404 and 1406 of
23          Title 28, the judicial district in which the respondent has his
           principal office shall in all cases be considered a district in which
24          the action might have been brought.

25  42 U.S.C. § 2000e-5(f)(3).

26  /////

4

1          Pursuant to § 2000e-5(f)(3), venue is proper in the United Stated District Court

2   for the Eastern District of California because the Eastern District is one of the four judicial

3   districts in the State in which the unlawful employment practice is alleged to have been

4   committed.  There is no venue defect to be cured, and 28 U.S.C. § 1406(a) provides no basis for

5   transfer to the United States District Court for the Northern District of California.  Plaintiff's

6   motion to transfer is therefore denied.

7                    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

8   I.  Standards Applicable to Motions for Summary Judgment

9          The "purpose of summary judgment is to 'pierce the pleadings and to assess the

10  proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587

11  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Summary

12  judgment is appropriate when it is demonstrated that there exists no genuine issue as to any

13  material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

14  56(c).

15         The party moving for summary judgment "always bears the initial responsibility

16  of informing the district court of the basis for its motion, and identifying those portions of 'the

17  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

18  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

19  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

20  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

21  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

22  to interrogatories, and admissions on file.'"  Id.

23         Summary judgment should be entered, after adequate time for discovery and upon

24  motion, against a party who fails to make a showing sufficient to establish the existence of an

25  element essential to that party's case and on which that party will bear the burden of proof at

26  trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the

1  nonmoving party's case necessarily renders all other facts immaterial." Id.  Summary judgment

2  should be granted "so long as whatever is before the district court demonstrates that the standard

3  for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

4         If the moving party meets its initial responsibility, the burden then shifts to the

5  opposing party to establish that a genuine issue as to any material fact actually does exist.

6  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also First

7  Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los

8  Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  The party opposing summary judgment must

9  demonstrate that the fact in contention is material, i.e., may affect the outcome of the suit under

10 the governing law, and that the dispute is genuine, i.e., is such that a reasonable jury could return

11 a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

12 T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

13        In attempting to establish the existence of a factual dispute, the party opposing

14 summary judgment may not rely on the allegations or denials of its pleadings but must tender

15 evidence of specific facts in the form of affidavits and/or admissible discovery material in

16 support of any contention that a dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at

17 586 n.11.  Although the party opposing summary judgment need not establish a material issue of

18 fact conclusively in its favor, "the claimed factual dispute [must] be shown to require a jury or

19 judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at

20 631.

21        In general, the evidence of the party opposing summary judgment is to be

22 believed, and all reasonable inferences that may be drawn from the facts placed before the court

23 is to be drawn in favor of the party opposing summary judgment.  See Anderson, 477 U.S. at

24 255; Matsushita, 475 U.S. at 587.  Inferences will not be drawn out of the air, however, and the

25 party opposing summary judgment is obligated to produce a factual predicate from which an

26 inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

1   (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party "must do more

2   than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the

3   record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

4   there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  "A scintilla

5   of evidence or evidence that is merely colorable or not significantly probative does not present a

6   genuine issue of material fact" precluding summary judgment.  Addisu v. Fred Meyer, Inc., 198

7   F.3d 1130, 1134 (9th Cir. 2000); see also Summers v. A. Teichert & Son, Inc., 127 F.3d 1150,

8   1152 (9th Cir. 1997).

9   II.  Defendants' Arguments and Evidence

10              Defendants move for summary judgment on judicial estoppel grounds.[1]

11   Defendants assert that plaintiff filed for Chapter 13 bankruptcy during the pendency of his

12   administrative Equal Employment Opportunity ("EEO") claims against the defendants and that,

13   although the bankruptcy was dismissed, it was not dismissed until plaintiff's creditors had been

14   notified of his bankruptcy and plaintiff had a de facto confirmed plan.  Defendants assert further

15   that plaintiff did not disclose his pending EEO claims to the Bankruptcy Court at any time during

16   the bankruptcy proceedings, as he was required to do.

17              Defendants argue that, by failing to disclose his EEO claims in the bankruptcy

18   proceedings, plaintiff either abandoned his EEO claims or deemed them worthless and cannot

19   come into this court now and sue the defendants on claims that he did not disclose to his

20   creditors during the pendency of proceedings in which the creditors could have insisted on

21   liquidation of the claims.  Defendants contend that plaintiff gained the benefits of the stay

22   provisions in his bankruptcy proceedings for 18 months based on his falsely completed written

23   statements and schedules which the bankruptcy court and plaintiff's creditors relied upon.  For

24   _____

25          [1] Defendants initially moved for summary judgment on two grounds.  The first ground
        was predicated on findings and recommendations issued by Magistrate Judge Nowinski on July
26   8, 2005.  After those findings and recommendations were vacated by order filed September 22,
        2005, defendants withdrew that portion of their motion.  (Def'ts' Reply to Pl.'s Opp'n at 1 n.1.)

these reasons, defendants move for summary judgment to estop plaintiff from going forward with this action.

Defendants' evidence establishes the following facts:  plaintiff was a civilian employee with the Navy at the Concord Naval Weapons Facility from at least 1984 to 1996, when plaintiff's employment was terminated; during his Navy employment, plaintiff filed numerous EEO complaints alleging racial discrimination, beginning with a complaint filed in 1984; in March 1995, plaintiff filed for Chapter 13 bankruptcy, In re Caviness, case No. 95-21795-A13 (Bankr. E.D. Cal.); in May 1995, plaintiff complained of discrimination on his job; plaintiff completed an EEO Intake Form concerning the May 1995 complaint on June 1, 1995; on July 25, 1995, five days prior to the dismissal of his first bankruptcy case, plaintiff re-filed for Chapter 13 bankruptcy in order to keep a protective stay in place, In re Caviness, case No. 95-26769-A13 (Bankr. E.D. Cal.); on July 31, 1995, case No. 95-21795-A13 was dismissed; on July 31, 1995, plaintiff completed a second EEO Intake Form dated July 31,1995; on August 9, 1995, plaintiff filed a Statement of Financial Affairs form; under the heading "Suits and Administrative Proceedings, Executions, Garnishments and Attachments," plaintiff was instructed to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case"; plaintiff did not list any administrative proceedings and checked the box "None"; at the end of the Statement of Financial Affairs form, plaintiff signed the statement "I declare under penalty of perjury that I have read the answers contained in the foregoing Statement of Financial Affairs and any attachments thereto and that they are true and correct"; plaintiff submitted bankruptcy schedules with his Statement of Financial Affairs; on Schedule B, listing personal property, plaintiff checked the box "None" under "Other contingent and unliquidated claims of every nature"; at the end of the schedules, plaintiff declared under penalty of perjury that he had read "the foregoing Summary and Schedules, consisting of 12 sheets, and that they are true and correct" to the best of his knowledge, information, and belief; on August 11, 1995, plaintiff sent his EEO counselor a letter

in which he requested that the counselor continue to process his EEO complaints and stated that

additional issues needed to be addressed in his formal complaint; on September 11, 1995,

plaintiff amended his bankruptcy schedules but did not declare his pending EEO claims; on

October 5, 1995, plaintiff amended his bankruptcy schedules a second time but did not declare

his pending EEO claims; on October 17, 1995, plaintiff and the bankruptcy trustee executed a

Stipulation for De Facto Confirmation, which established a plan for the trustee to go about

paying creditors; on February 8, 1996, plaintiff amended his bankruptcy schedules a third time

but did not declare his pending EEO claims; on February 26, 1996, the bankruptcy court granted

the motion for a lift-stay filed by plaintiff's mortgagor; on March 25, 1996, plaintiff amended his

bankruptcy schedules a fourth time but did not declare his pending EEO claims; in June 1996,

the trustee filed a Trustee's Notice of Intent to Dismiss Prior to Confirmation due to (1)

plaintiff's failure to make payments as proposed by the plan, (2) unreasonable delay by plaintiff

that was prejudicial to creditors, and (3) the fact that plaintiff's plan was not feasible; plaintiff

did not oppose the trustee's motion; in September 1996, plaintiff contacted an EEO counselor

regarding a new complaint of discrimination; in December 1996 plaintiff's employment with the

Navy was terminated; plaintiff appealed his termination to the Merit Systems Protection Board

(MSPB); plaintiff did not notify the bankruptcy court of the termination of his employment or of

his MSPB appeal, as required by Local Rule 3015-1 (Bankr. E.D. Cal.); in January 1997

plaintiff's second bankruptcy case was dismissed; according to the trustee's final report, five of

plaintiff's creditors did not submit claims to the bankruptcy court, and four of those did not

receive notice that plaintiff's bankruptcy was dismissed.

Defendants note plaintiff's own allegation that he had filed at least 34 EEO claims

by 1998, of which all but three had been dismissed.  The Navy subsequently issued a final agency

decision finding no discrimination with respect to plaintiff's last three EEO claims, and that

decision was affirmed by the Office of Federal Operations for the EEOC in August 2004.

Plaintiff filed this action in November 2004 complaining of discrimination going back to 1995.

1    Defendants assert that the principle of judicial estoppel bars litigants from taking

2    inconsistent positions, whether in the same litigation or in separate lawsuits.  Defendants argue

3    that the plaintiff in this case has taken inconsistent positions in his bankruptcy proceedings, in

4    which he failed to declare any EEO claims, and in this action, in which he presents his EEO

5    claims as claims having monetary value.

6    Defendants cite authorities holding that administrative claims are assets that must

7    be listed on a debtor's Schedule B in a Chapter 13 proceeding, that it is the debtor's duty to list

8    all assets completely and accurately on his bankruptcy schedules, and that the duty of disclosure

9    carries with it the duty to amend the schedules as necessary due to the fact that the court and the

10   creditors base their actions on the debtor's disclosure statements and schedules.  Defendants also

11   cite cases applying judicial estoppel to bar an EEO plaintiff from taking inconsistent positions in

12   a bankruptcy court and a district court in which the plaintiff alleges employment discrimination.

13   A litigant may not hide an EEO claim, which is a potential asset or source of income, from the

14   bankruptcy court and creditors by failing to list the EEO claim on the Statement of Financial

15   Affairs or Schedule B then bring a suit on the same claim.  Otherwise, the litigant would gain

16   a windfall by receiving the protection of the bankruptcy court without having disclosed a

17   potential asset while retaining the possibility of a settlement or verdict on the basis of the

18   undisclosed EEO claim.

19   Defendants argue that plaintiff pursued his EEO claims and bankruptcy

20   simultaneously, with bankruptcy proceedings continuing from March 1995 to January 1997 and

21   EEO claims pending before the Navy from May 1995 through September 1995 and again from

22   September 1996 to the present, and did not disclose the EEO claims in the bankruptcy

23   proceedings at any time.  Five creditors (identified by plaintiff as Alamo Rent a Car, Gary

24   Kaplan, GEICO, Hubschman & Roman, Roy Gillespie, and the Veterans Administration) did not

25   file claims in the bankruptcy proceedings, possibly in reliance on plaintiff's demonstrated

26   inability to pay his debts according to his schedules and financial statements.  The trustee, the

creditors, and the court were deprived of an opportunity to expedite repayment of plaintiff's debts through possible liquidation of his EEO claims, and for 18 months plaintiff benefitted from the automatic stay that prevented any collection efforts.  Plaintiff held his creditors at bay for 18 months while shielding his EEO claims from possible liquidation.  Five creditors in the second bankruptcy did not file claims and were not notified of the dismissal of that bankruptcy, allowing plaintiff to avoid collection efforts by those creditors indefinitely.  Defendants request that plaintiff be judicially estopped from asserting a position in this case that is inconsistent with his position in his bankruptcy proceedings.

III.  Plaintiff's Arguments and Evidence

In opposition to defendants' motion, plaintiff has not reproduced the itemized facts in defendants' Statement of Undisputed Facts and admitted or denied each fact, supporting each denial with a citation to evidence.  See Local Rule 56-260(b).  Nor has plaintiff offered his own Statement of Disputed Facts, as permitted by the Local Rules.  See id.  Instead, plaintiff has offered eleven paragraphs under the heading "Undisputed Facts."  Each paragraph is supported solely by plaintiff's own declaration, except for one paragraph that is also supported by a citation to defendants' Exhibit 9, a copy of plaintiff's EEO complaint dated September18, 1996.  Thus, plaintiff has not disputed any of defendants' facts.

Plaintiff argues that defendants' motion for summary judgment based on judicial estoppel misses the mark and that defendants should be estopped from asserting a position in this action that is inconsistent with their position in prior administrative proceedings.  Plaintiff does not demonstrate any inconsistency in defendants' position and cites no authority holding that an allegedly inconsistent position in an administrative proceeding can be a basis for judicial estoppel.

On the merits of defendants' motion, plaintiff argues that his failure to disclose his EEO claims in his bankruptcy proceedings should be excused because he was representing himself in those proceedings and did not know he needed to disclose pending EEO claims that

1    were supposed to be investigated by the EEOC.  Plaintiff argues further that he had no motive to

2    conceal the EEO claims "because he was only filing the bankruptcy since he was off work due to

3    Defendant's conduct toward him and could not afford to pay his house notes."  (Pl.'s Opp'n at 5.)

4    Plaintiff suggests that his failure to amend the bankruptcy schedules to disclose his EEO claims

5    is moot because he lost his house but eventually paid off all of the other creditors he had when he

6    filed for bankruptcy.  With regard to the new EEO claim filed on September 16, 1996, plaintiff

7    argues that he had already received notice of the bankruptcy trustee's motion to dismiss the

8    second bankruptcy case and knew the case was going to be dismissed.

9           Plaintiff argues that judicial estoppel is not applicable here because there is no

10   indication that he took a position, accepted by the bankruptcy court, that was inconsistent with a

11   subsequent position, or that he derived any unfair advantage or imposed any unfair detriment on

12   any opposing party.  Plaintiff reiterates that he was not represented by counsel in his EEO

13   proceedings, his bankruptcy proceedings, or this court when he filed his complaint.  He argues

14   that, because defendants denied EEO complaints filed before 1995, he had no reason to list the

15   claims filed in 1995, and he did not file a new claim until he knew the bankruptcy was going to

16   be dismissed.  Plaintiff argues that he had received no feedback from the EEO investigator on his

17   1995 claims and did not know whether the claims were going to be accepted or what the outcome

18   would be.  Plaintiff also argues that he was merely attempting to save his home from foreclosure

19   and omitting his EEO claims was due to mere inadvertence or mistake.

20          In his declaration, plaintiff admits that he completed EEO intake forms on May 9,

21   1995 and July 31, 1995, characterizes these as "prior EEO complaints," speculates that they were

22   never investigated, and states that "no result ever came about."  Plaintiff admits that on June 26,

23   1996, he received notice that his second bankruptcy case would likely be dismissed.  Plaintiff

24   declares that "the primary reason" he filed for bankruptcy was to protect his home from

25   foreclosure after he stopped working.  He declares that he "eventually paid off all the creditors

26   /////

1   that [he] owed at the time of filing Bankruptcy." (Pl.'s Decl. in Supp. of Opp'n to Def'ts' Mot.

2   for Summ. J. ¶¶ 6-9.)

3           Plaintiff includes in his opposition a request for an order compelling defendants to

4   provide discovery requested by plaintiff during EEO proceedings in 2002 but which the

5   administrative law judge declined to compel.  Plaintiff offers no information about his pro se

6   request for discovery in administrative proceedings but cites Rule 56(f) and requests that

7   defendants' motion be continued until he receives the requested discovery.  Plaintiff fails to

8   specify particular facts on which discovery should be had or explain the issues on which

9   discovery is necessary.  Plaintiff also asks the court to allow him to amend his complaint "to

10   allege any deficiencies which would obviate the need for the summary judgment motion at this

11   time." (Opp'n at 5-6.)  Plaintiff contends that his request to amend is consistent with his request

12   for discovery and would allow him to show defendants' inconsistent positions in the

13   administrative proceedings and thereby defeat defendants' motion for summary judgment based

14   on judicial estoppel.

15   IV.  <u>Defendants' Reply</u>

16           Defendants reiterate their contention that plaintiff filed bankruptcy for the purpose

17   of frustrating his creditors, that he withheld disclosure of EEO claims on which he placed value,

18   that he produced payment plans he had no means of meeting in the absence of settling

19   undisclosed discrimination claims, and that he now seeks to recover on those undisclosed claims.

20   Defendants argue that judicial estoppel applies even if there was no discharge of debts and the

21   bankruptcy was dismissed, as occurred here, in a case where the bankruptcy court, the bankruptcy

22   trustee, and the creditors relied on the debtor's schedules and financial statements in agreeing to

23   his proposed plans and in affording him repeated opportunities to amend and to comply with his

24   proposed plan.  Defendants highlight the fact that the bankruptcy trustee eventually moved to

25   dismiss plaintiff's second bankruptcy case in part due to unreasonable delay by plaintiff that was

26   prejudicial to creditors.

1        Defendants review the factors applicable to judicial estoppel as listed in <u>New

2  Hampshire v. Maine</u>, 532 U.S. 742, 751 (2001), and argue that each factor leads to the

3  conclusion that judicial estoppel is warranted here:  (1) plaintiff asserted inconsistent positions in

4  his bankruptcy proceedings and in this case by failing to list his pending EEO claims as assets in

5  bankruptcy documents he signed under penalty of perjury and by arguing in this court that those

6  same undisclosed EEO claims are meritorious and entitle him to damages; (2) plaintiff's

7  bankruptcy filings gained him the advantages of the automatic stay provisions for nearly two

8  years during which his creditors could not seize his assets or insist on payments outside of a

9  confirmed plan that was based on a lack of assets; and (3) plaintiff derives an unfair advantage in

10  this action over his creditors or over the defendants, in that he failed to disclose his EEO claims

11  to his creditors, thereby implying that his claims were not valid, and now he asserts in this court

12  that the claims are valid, thereby forcing defendants to defend against claims that are frivolous,

13  according to his prior position, or valid, in which case they should have been disclosed to the

14  creditors.

15        In response to plaintiff's argument that he did not know he was required to

16  disclose his EEO claims in the bankruptcy case, defendants note that there is literally no evidence

17  supporting this argument, as plaintiff's declaration is completely silent on this point.  Defendants

18  assert that the argument is irrelevant in any event because the language of the bankruptcy form is

19  unambiguous, instructing the debtor to list all administrative proceedings to which he is or was a

20  party within one year immediately preceding the filing of the bankruptcy case.  Defendants also

21  point out that the EEO intake forms completed by plaintiff in 1995, provided as Exhibits 6 and 7

22  to defendants' motion, assert claims of discrimination valued at $300,000.  Defendants observe

23  that, given plaintiff's history of filing dozens of discrimination claims beginning in 1984,

24  plaintiff knew the submission of a discrimination claim to an EEO counselor invoked the

25  administrative process.  Defendants cite Ninth Circuit authority holding that judicial estoppel

26  will be imposed when the debtor has knowledge of enough facts to know that a potential cause of

1  action exists during the pendency of the bankruptcy but fails to amend his schedules or disclosure

2  statements to identify the cause of action as a contingent asset.

3          Defendants object to plaintiff's assertion that he had no motive to conceal the

4  EEO claims as an asset.  In defendants' view, plaintiff was motivated by his hope of prevailing

5  on his EEO claims after bankruptcy and either not sharing the proceeds with creditors or having

6  the ability to pay his creditors when he chose.  Defendants reject plaintiff's contention that he

7  knew, as early as June 1996, that his bankruptcy case would be dismissed and therefore had no

8  reason to list his EEO claims on his schedules.  Defendants point out that plaintiff amended his

9  schedules several times prior to June 1996 and did not disclose his EEO claims.

10 V.  Discussion

11          A.  Plaintiff's Rule 56(f) Request and Request for Leave to Amend

12          Plaintiff's counsel has not filed a Rule 56(f) motion but has informally requested

13 an order compelling the defendants to provide discovery requested by the pro se plaintiff during

14 administrative proceedings in 2002.  This request is unsupported by any applicable authority.  It

15 does not appear that plaintiff has sought discovery in this action pursuant to the Federal Rules of

16 Civil Procedure, and it is evident from the docket for this action that plaintiff has not filed a

17 proper motion to compel discovery pursuant to those rules.

18          A party seeking denial or continuance of a summary judgment motion based on a

19 need for discovery is required to file a motion under Rule 56(f).  Brae Transp., Inc. v. Coopers &

20 Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986) ("References in memoranda and declarations to a

21 need for discovery do not qualify as motions under Rule 56(f).").  The party must demonstrate

22 that there are specific facts he hopes to discover that will raise an issue of material fact.  Harris v.

23 Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir. 1991); Carpenter v.

24 Universal Star Shipping, S.A., 924 F.2d 1539, 1547 (9th Cir. 1991).  "The burden is on the party

25 seeking to conduct additional discovery to put forth sufficient facts to show that the evidence

26 sought exists."  Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir. 1987).  See also

1  Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306 n.1 (9th Cir.

2  1986) (holding that the party opposing summary judgment "has the burden under Rule 56(f) to

3  show what facts she hopes to discover to raise an issue of material fact").  "Denial of a Rule 56(f)

4  application is proper where it is clear that the evidence sought is almost certainly nonexistent or

5  is the object of pure speculation."  Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991).

6           In the present case, plaintiff's request falls far short of the showing required to

7  support a denial or a continuance of a motion for summary judgment.  Plaintiff has not

8  demonstrated by affidavit that he cannot present facts essential to justify his opposition to

9  defendants' motion, as required by Rule 56(f).  See also Local Rule 56-260(b) ("If a need for

10 discovery is asserted as a basis for denial of the [summary judgment] motion, the party opposing

11 the motion shall provide a specification of the particular facts on which discovery is to be had or

12 the issues on which discovery is necessary.")  Plaintiff's Rule 56(f) request is denied.

13          Plaintiff's request for leave to amend is also without merit.  Plaintiff indicates a

14 desire to amend for the purpose of showing that defendants took inconsistent positions in

15 plaintiff's administrative proceedings.  Plaintiff has not demonstrated that he can amend his

16 complaint to allege facts that would preclude defendants from moving for summary judgment on

17 the basis of judicial estoppel.  Plaintiff's informal request for leave to amend is denied.  See

18 California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472

19 (9th Cir. 1987) ("Valid reasons for denying leave to amend include undue delay, bad faith,

20 prejudice, and futility.").

21      B. Judicial Estoppel

22          Courts have uniformly recognized that the purpose of the doctrine of judicial

23 estoppel "is 'to protect the integrity of the judicial process' by 'prohibiting parties from

24 deliberately changing positions according to the exigencies of the moment.'"  New Hampshire v.

25 Maine, 532 U.S. 742, 749-50 (2001) (citations omitted).  "Because the rule is intended to prevent

26 'improper use of judicial machinery' [citation omitted], judicial estoppel 'is an equitable doctrine

1   invoked by a court at its discretion,' <u>Russell v. Rolfs</u>, 893 F.2d 1033, 1037 (9th Cir. 1990)

2   (internal quotation marks and citation omitted)." <u>Id.</u> at 750.

3            "The doctrine of judicial estoppel, sometimes referred to as the
             doctrine of preclusion of inconsistent positions, is invoked to
4            prevent a party from changing its position over the course of
             judicial proceedings when such positional changes have an adverse
5            impact on the judicial process.  'The policies underlying preclusion
             of inconsistent positions are "general consideration[s] of the
6            orderly administration of justice and regard for the dignity of
             judicial proceedings."' . . . .

7
             . . . Judicial estoppel is most commonly applied to bar a party from
8            making a factual assertion in a legal proceeding which directly
             contradicts an earlier assertion made in the same proceeding or a
9            prior one."

10  <u>Russell</u>, 893 F.2d at 1037 (citations omitted).

11           The Supreme Court has identified three factors that are typically considered by

12  courts in deciding whether judicial estoppel is warranted:  (1) whether a party's position in a later

13  judicial proceeding is clearly inconsistent with that party's earlier position before another court;

14  (2) whether the party persuaded the first court to accept the earlier position, so that judicial

15  acceptance of an inconsistent position in a later proceeding would create the perception that one

16  of the two courts was misled; and (3) whether the party seeking to assert an inconsistent position

17  would derive an unfair advantage or impose an unfair detriment on the opposing party if not

18  estopped.  <u>Hamilton v. State Farm Fire & Casualty Co.</u>, 270 F.3d 778, 782-83 (9th Cir. 2001)

19  (citing <u>New Hampshire</u>, 532 U.S. at 750-51).  Other considerations may be appropriately

20  considered in specific factual contexts.  532 U.S. at 751.

21           In the bankruptcy context, the Ninth Circuit has held that "a party is judicially

22  estopped from asserting a cause of action not raised in a reorganization plan or otherwise

23  mentioned in the debtor's schedules or disclosure statements." <u>Hamilton</u>, 270 F.3d at 783. <u>See</u>

24  <u>Hay v. First Interstate Bank of Kalispell, N.A.</u>, 978 F.2d 555, 557 (9th Cir. 1992) (failure to

25  disclose a potential cause of action in a debtor's bankruptcy schedules and disclosure statements

26  estops the debtor from prosecuting the cause of action and entitles the defendants to summary

17

1   judgment).  See also Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1294-95 (11th Cir. 2003)

2   (plaintiff who disclosed employment discrimination claims to her attorney and bankruptcy trustee

3   but failed to disclose the claims in her bankruptcy filings was judicially estopped from pursuing

4   the claims in district court); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1287-88 (2002)

5   (plaintiff who failed to disclose employment discrimination claim in concurrent bankruptcy

6   proceedings was judicially estopped from seeking monetary damages on the claim); In re Coastal

7   Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999) (holding that a debtor is barred from bringing

8   claims that were known to the debtor but were not disclosed in the debtor's bankruptcy

9   statements and schedules); Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.,

10  989 F.2d 570, 571-72 (1st Cir. 1993) (debtor who obtained relief in bankruptcy court on the

11  representation that no claims existed cannot resurrect the claims and obtain relief on them);

12  Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3rd Cir. 1988) (debtor who

13  failed to list potential claims against a creditor was estopped from pursuing the claims).

14          "The debtor, once he institutes the bankruptcy process, disrupts the flow of

15  commerce and obtains a stay and the benefits derived by listing all his assets." Hamilton, 270

16  F.3d at 785.  In exchange for those benefits, the Bankruptcy Code and Rules impose on the

17  debtor a duty to disclose all assets, including contingent and unliquidated claims. Id.; 11 U.S.C.

18  § 521(a)(1).  The bankruptcy estate includes "all legal or equitable interests of the debtor" as of

19  the commencement of case.  11 U.S.C. § 541(a)(1).  Thus, the bankruptcy estate includes claims

20  being litigated by the debtor as well as administrative claims.  270 F.3d at 785.  See Kamont v.

21  West, 258 F. Supp. 2d 495, 499-500 (S.D. Miss.), aff'd, No. 03-60392, 2003 WL 22477703 (5th

22  Cir. Oct. 31, 2003) .[2]

23

24          [2] The Kamont case is very similar to the instant action.  Kamont had three EEO
    complaints pending when she filed a bankruptcy petition, and she filed a fourth EEO complaint
    during the bankruptcy proceedings.  258 F. Supp. 2d at 498.  Kamont's bankruptcy petition and
25  schedules did not disclose any administrative proceedings.  Id.  The district court ruled that
    Kamont was judicially estopped from proceeding on claims raised in the four EEO complaints
26  despite Kamont's contention that she did not know the claims were omitted because she was

1  "The debtor's duty to disclose potential claims as assets does not end when the

2  debtor files schedules, but instead continues for the duration of the bankruptcy proceeding." 270

3  F.3d at 785. See Fed. R. Bankr. P. 1009(a) (providing that schedules may be amended as a

4  matter of course before the case is closed). "Judicial estoppel will be imposed when the debtor

5  has knowledge of enough facts to know that a potential cause of action exists during the

6  pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify

7  the cause of action as a contingent asset." 270 F.3d at 784.

8  In the present case, the undersigned finds that the balance of equities tips sharply

9  in favor of application of judicial estoppel. When plaintiff commenced his second bankruptcy

10  case on July 25, 1995, plaintiff had a statutory duty to disclose the EEO claim he filed in May

11  1995. After he filed a second EEO claim on July 31, 1995, he had a duty to amend his

12  bankruptcy petition and schedules to disclose the second claim. After he filed a third EEO claim

13  in September 1996, he had a duty to amend his bankruptcy petition and schedules to disclose the

14  third claim. Plaintiff did not disclose any EEO claim at any time during his bankruptcy

15  proceedings, despite the fact that he amended his schedules four times prior to the date on which

16  the trustee moved to dismiss the second bankruptcy case and despite the fact that the case

17  remained open for seven months after the trustee's motion was filed.

18  Plaintiff has maintained inconsistent positions in his bankruptcy proceedings and

19  this court. Plaintiff's creditors, the bankruptcy trustee, and the bankruptcy court relied on

20  plaintiff's position that he had no administrative or legal claims, which gave plaintiff an unfair

21  advantage. By failing to disclose his discrimination claims in the bankruptcy proceedings,

22  plaintiff implied that the claims were of no value. In this court, plaintiff seeks damages in the

23  amount of $1.2 million on the claims not disclosed in his bankruptcy proceedings. Plaintiff's

24  _____

25  suffering from work related stress and depression and did not actively participate in the case
    other than to sign the petition and schedules. Id. at 498-99. The court held that a "debtor's
26  failure to satisfy its statutory duty to disclose is 'inadvertent' only when, in general, the debtor
    lacks knowledge of the undisclosed claims or has no motive for their concealment." Id. at 500.

1   failure to disclose claims he now values at $1.2 million gained plaintiff the advantage of an

2   automatic stay for approximately eighteen months, during which time creditors could not seek his

3   assets, and prevented his creditors from gaining an interest in or control over his EEO claims.  A

4   de facto confirmation plan executed by plaintiff and the trustee was filed with the bankruptcy

5   court.  That plan was based on a list of assets that did not include plaintiff's discrimination

6   claims.  Plaintiff amended his bankruptcy schedules four times and did not disclose his

7   discrimination claims.  It is plausible that some of plaintiff's creditors declined to submit claims

8   to the bankruptcy court in reliance on plaintiff's asserted lack of assets, and plaintiff clearly

9   succeeded in persuading the trustee and the court to accept his position that he had no assets of

10  value.

11         Plaintiff does not deny having knowledge of his discrimination claims during the

12  pendency of his bankruptcy proceedings.  He was actively pursuing those claims during the

13  relevant time.  On August 11, 1995, just two days after filing a disclosure statement and

14  bankruptcy schedules that did not reveal any administrative claims, plaintiff wrote a letter to his

15  EEO counselor requesting that the counselor continue to process his EEO complaints.  The

16  bankruptcy forms completed by plaintiff under penalty of perjury are very clear in requiring the

17  debtor to list "all suits and administrative proceedings to which the debtor is or was a party

18  within one year immediately preceding the filing of this bankruptcy case."  Plaintiff's argument

19  that he did not understand the disclosure requirement is not credible.

20         The facts and circumstances of this case contradict plaintiff's contentions that he

21  had no motive for concealment of assets and that his failure to disclose the EEO claims was

22  inadvertent.  By failing to list the EEO claims on his bankruptcy schedules, plaintiff deceived his

23  creditors, the bankruptcy trustee, and the bankruptcy court, all of whom relied on plaintiff's

24  petition and schedules to determine what action, if any, they would take in the bankruptcy

25  proceedings.  Plaintiff enjoyed the benefit of the automatic stay, avoided collection efforts that

26  might otherwise have been made by his creditors, and prevented creditors from obtaining an

interest in the administrative claims that plaintiff actively pursued during the bankruptcy

proceedings and afterward.  While it is true that the trustee moved to dismiss plaintiff's second

bankruptcy case in June 1996, that fact does not excuse plaintiff's failure to disclose the EEO

claim that was pending when he filed for bankruptcy in 1995 or his failure to disclose all three

EEO claims in the four amended bankruptcy schedules he filed prior to June 1996.

"'[T]he integrity of the bankruptcy system depends on full and honest disclosure

by debtors of all of their assets.'"  <u>Hamilton</u>, 270 F.3d at 785 (quoting <u>In re Coastal Plains, Inc.</u>,

179 F.3d at 208 (internal citations omitted)).  Courts cannot permit debtors to obtain relief from

the bankruptcy court by representing that no claims exist and later assert those claims for their

own benefit in other proceedings.  <u>Id.</u>  In light of the chronology established by the undisputed

facts in the present case and plaintiff's complete failure to disclose his EEO claims as assets at

any time during his bankruptcy proceedings, plaintiff should be judicially estopped from

pursuing his discrimination claims in this court.  The undersigned will therefore recommend that

defendants' motion for summary judgment be granted on the ground of judicial estoppel.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's December 28, 2005 amended motion to transfer, renewed at oral

argument on October 27, 2006, is denied;

2.  Plaintiff's request for discovery pursuant to Rule 56(f) is denied;

3.  Plaintiff's request for leave to amend is denied;

IT IS RECOMMENDED that:

1.  Defendants' August 15, 2005 motion for summary judgment, renewed by

defendants' amended notice of motion filed September 18, 2006, be granted; and

2.  Judgment be entered for defendants, and this action be closed.

These findings and recommendations will be submitted to the United States

District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

ten (10) days after being served with these findings and recommendations, any party may file and

serve written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed and served within ten (10) days after the objections are served.  The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 2, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
ddad1\orders.prose\caviness2388.msj.f&r

22